ERIC GRANT
United States Attorney
DHRUV M. SHARMA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

FILED
Sep 02, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTOPHER WILLIAM EDWARD ABPLANALP,

Defendant.

CASE NO. 2:26-cr-0156 DAD

18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

# I N F O R M A T I O N

COUNT ONE: [18 U.S.C. § 1343 – Wire Fraud]

The United States Attorney charges:

CHRISTOPHER WILLIAM EDWARD ABPLANALP,

defendant herein, as follows:

## PARTIES AND RELEVANT ENTITIES

At all relevant times,

1. Defendant CHRISTOPHER WILLIAM EDWARD ABPLANALP lived and worked in Placer County, in the State and Eastern District of California.

2. ABPLANALP was employed by Business-1 as a Vice President and Executive Manager. Business-1 was owned by Victim-1 and Victim-2.

SCHEME TO DEFRAUD

3. Beginning in or about February 2023, and continuing through in or about July 2025, in the State and Eastern District of California, and elsewhere, ABPLANALP knowingly and with intent to defraud devised, intended to devise, participated in and executed a material scheme and artifice to defraud Business-1 and its owners for the purpose of obtaining money by means of materially false and fraudulent pretenses, representations, and promises, and the concealment and omissions of material facts.

4. The purpose of the scheme was for ABPLANALP to unlawfully enrich himself with over $2.3 million of Business-1's money, the majority of which he then spent gambling.

MANNER AND MEANS

In furtherance of the scheme and artifice to defraud, ABPLANALP employed, among others, the following manner and means:

5. ABPLANALP was a trusted employee of Business-1, worked there for approximately 20 years, and was considered its owners' "right-hand man." Victim-1 and Victim-2 trusted ABPLANALP explicitly and granted him complete access to Business-1's finances. They expected ABPLANALP to work for the benefit of Business-1 and were induced by this relationship of trust to relax the care and vigilance they would have ordinarily exercised in the management of their financial affairs.

6. Notwithstanding, ABPLANALP repeatedly abused this trust and diverted over $2.3 million from Business-1 for his personal gain. At all relevant times, ABPLANALP created the false pretense that he was operating for the benefit of, and within the scope of his employment with, Business-1, when in reality he was stealing money from Business-1.

7. One manner in which ABPLANALP stole money was using an online payment processing system, Processor-1. Business-1 had an account with Processor-1 (ending in 2805) and used this account to process credit card transactions for its clients. ABPLANALP had access to this account and was authorized to engage in transactions as needed to fulfill his job responsibilities or for the benefit of Business-1. ABPLANALP was never authorized to withdraw money from this account for his personal benefit. Nevertheless, during the relevant time period, ABPLANALP transferred millions of dollars from Business-1's account to his own account at Processor-1 (ending in 2041) for his personal

enrichment. ABPLANALP never told Victim-1 or Victim-2 about these withdrawals, and at all times operated under the false pretense that it was a legitimate activity within the scope of his employment, when in fact it was theft.

8. In order to facilitate some of these withdrawals, between late May and early July of 2025, ABPLANALP fraudulently ran a client's credit card number 52 different times, for alternating charges of approximately $11,720 and $13,032, purportedly to pay for items the client had not ordered and to fulfill invoices that did not exist. In this manner, ABPLANALP caused Business-1 to improperly receive over $643,000 from its client, which he then transferred to his personal account at Processor-1.

9. ABPLANALP also transferred money from Business-1's Processor-1 account to various other friends and acquaintances as gifts or to repay debts he had taken from them. For example, ABPLANALP transferred over $118,000 of Business-1's money to repay an individual from whom he had borrowed money in order to gamble.

10. Another way in which ABPLANALP stole money was by fraudulently directing clients and vendors of Business-1 to tender payments that were owed to Business-1 to his personal accounts. In March 2023, ABPLANALP directed one client to write a check to him in order to pay an invoice, and then deposited that check in his personal account. Similarly, ABPLANALP also directed clients to electronically transfer money to his personal bank account, purportedly to satisfy outstanding invoices for items purchased. ABPLANALP also directed vendors of Business-1 to issue rebates and refunds to his personal account at Processor-1, rather than Business-1's account. Every such instruction to a client or to a vendor was a misrepresentation intended to further ABPLANALP's scheme to defraud.

11. ABPLANALP tried to conceal his theft by altering, deleting or making false entries in Business-1's accounting software. For example, ABPLANALP falsely entered a transaction reflecting the deposit of a check, when in fact that check had been deposited in ABPLANALP's personal account. He then re-entered that transaction repeatedly over different dates in an effort to reconcile the accounts. For a similar purpose, ABPLANALP deleted invoices that were owed, created unauthorized credit entries, or reduced amounts owed to zero by misclassifying them as charitable sponsorships, when in fact the clients had already paid the invoices.

12. In total, ABPLANALP caused Business-1 a loss of approximately $2,321,759.00. He

spent the majority of the funds stolen at various gambling institutions. ABPLANALP's theft and use of the money stolen from Business-1 was done with the intent to defraud, deceive and cheat Business-1 and its owners of money. ABPLANALP's false and fraudulent pretenses, representations, and promises, and concealment and omissions of facts, were material in that they had a natural tendency to influence, or were capable of influencing, Business-1, and various of its clients and vendors, to part with money. Had Business-1 or its owners been aware of ABPLANALP's misappropriation of its money, its owners would have immediately stopped it. Similarly, had Business-1's clients and vendors been aware of ABPLANALP's misrepresentations regarding where to send payments, they would not have diverted money to ABPLANALP's personal accounts.

INTERSTATE WIRE

13. On or about June 29, 2025, in the State and Eastern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, ABPLANALP knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, to wit, a payment in the amount of $19,101.11 from Business-1's account at Processor-1 to ABPLANALP's personal account at Processor-1.

All in violation of Title 18, United States Code, Section 1343.

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of the offense alleged in this Information, defendant CHRISTOPHER WILLIAM EDWARD ABPLANALP shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violation, including but not limited to the following:

a. A sum of money equal to the total amount of proceeds traceable to such offense, for which defendant is convicted.

2. If any property subject to forfeiture because of the offense alleged in this Information, for which defendant is convicted:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

Dated: September 2, 2026

ERIC GRANT
United States Attorney

By: /s/ Dhruv M. Sharma
DHRUV M. SHARMA
Assistant United States Attorney

**United States v. Christopher William Edward ABPLANALP**
**Penalties for Information**

**COUNT 1:**

VIOLATION: 18 U.S.C. § 1343 – Wire Fraud

PENALTIES: Up to twenty (20) years in prison; or
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater; or both fine and imprisonment;
Supervised release of up to three (3) years;
Restitution

SPECIAL ASSESSMENT: $100 (mandatory)

**FORFEITURE ALLEGATION:**

VIOLATION: 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES: As stated in the charging document